# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MYRA D. MALLOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV420 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Myra D. Malloy, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.[1]  The Court has before it the certified administrative record and cross-motions for judgment.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for a POD, DIB, and SSI on May 22, 2006 alleging a disability onset date of January 27, 2006.  (Tr. 29, 132-142.)[2]  The application was

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).
[2] Transcript citations refer to the administrative record.

denied initially and again upon reconsideration. (*Id.* at 78-98.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 99-100.) At the April 8, 2009 hearing were Plaintiff, her attorney, and a vocational expert ("VE"). (*Id.* at 43.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 26-37.) On March 31, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-4.)

## II. FACTUAL BACKGROUND

Plaintiff was 33 years old on the alleged disability onset date. (*Id.* at 36-37.) She had at least a high school education, was able to communicate in English, and her past relevant work included work as a machine operator. (*Id.* at 36.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

2

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423 (d)(3), 1382c(a)(3)(D).

months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

---

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

(5)     Whether the claimant is able to perform any other work considering both her

        residual functional capacity[5] and her vocational abilities.  If so, the claimant is

        not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 27, 2006.  (Tr. 31.)  The ALJ next found in step two that Plaintiff had the following severe impairments:  depression, fibromyalgia, chronic fatigue, sleep apnea, hypertension, hyperthyroidism, anemia, perennial allergic rhinitis, seasonal allergies, back problems, attention deficit disorder, and osteoarthritis.  (*Id.*)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1.  (*Id.*)  The ALJ reached the fourth step of the sequence, at which point she determined that Plaintiff could return to her past relevant work, and that she was not disabled from the alleged onset date, January 27, 2006, through the date of the decision.  (*Id.* 36-37.)  The ALJ also made alternative step five findings, concluding that there were also jobs in the national economy which Plaintiff could perform consistent with Plaintiff's RFC, age, education, and work experience.  (*Id.* at 36-37.)

## B.   Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain).  *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)."  *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 34-36.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform light work. (*Id.* at 34.) However, Plaintiff could never climb ropes, scaffolds, or ladders; could only occasionally balance; could not work at unprotected heights or in the presence of dangerous machinery or equipment; could perform no highly detailed work; could perform no work requiring sustained concentration, attention, persistence, or pace for prolonged periods; and could have only occasional contact with the general public or co-workers. (*Id.*) The ALJ noted too "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 35.)

## C. Past Relevant Work

The ALJ found in step four that Plaintiff was capable of performing past relevant work as a machine operator. (*Id.* at 36.) The ALJ concluded that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.*) The ALJ thus concluded Plaintiff was not under a disability from the alleged onset date of January 27, 2006 through the date of the decision. (*Id.* at 37.)

## D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d

6

1235, 1236 (4th Cir. 1979). If the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). Although the ALJ concluded that Plaintiff could perform her past relevant work, he found further that given her age, education, work experience, and RFC, there were jobs in the national economy that Plaintiff could perform, such as order clerk, charge account clerk, and optical good worker, which the VE characterized as sedentary unskilled work. (Tr. 37.)

## V. ANALYSIS

Plaintiff raises five issues. First, she contends that the ALJ improperly discounted the opinions of her treating physicians. (Docket Entry 8 at 2.) Second, Plaintiff argues that the AJL failed to address all the evidence. (*Id.*) Third, she asserts that the ALJ erred in concluding she can perform light work. (*Id.*) Fourth, Plaintiff contends that the ALJ erred by finding that she did not have a listed impairment. (*Id.*) Fifth, she argues that the ALJ erred by using the Medical-Vocational Guidelines to direct a conclusion of not disabled. (*Id.*)

## I. The ALJ Did Not Commit Prejudicial Error in Applying the Treating Physician Rule.

Plaintiff asserts the ALJ erred in the weight attributed to the opinions of the following treating physicians: Dr. John Keeling, Dr. Shaili Deveshwar, and Dr. Anna Voytek. (*Id.* at 2-4.) For the following reasons, the undersigned disagrees.

7

The "treating physician rule,"[6] 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[7]  But not all treating sources are created equal.  An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it.  *Id.* §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).  These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.  *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and

---

[6] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule.  77 Fed. Reg. 10651-10657 (Feb. 23, 2012).  Given that all material events in this action precede this nominal regulatory change, this Opinion and Recommendation will make use of the pre-March 26, 2012 citations.

[7] Social Security Ruling 96–2p provides that "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Social Security Ruling 96-2p, *Giving Controlling Weight to Treating Source Medical Opinions*.  However, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight."  *Id.*  Social Security Ruling 96-5p provides further that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  Social Security Ruling 96-5p, *Medical Source Opinions on Issues Reserved to the Commissioner*.  However, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)."  *Id.*

8

laboratory findings and consistent with the other substantial evidence in the case record. *Id.* §§ 404.1527(d)(2)-(4), 416.927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Dr. Keeling of Rockingham Orthopedic Associates ("RAC") chronicled Plaintiff's medical treatment from 2002 through September 2005. (Tr. 248-294.) Plaintiff originally went to RAC as a result of a 2001 automobile accident which caused her knee and ankle problems. (*Id.* at 288.) Plaintiff suffered a fall in 2003 causing further ankle and foot injuries as well as a tear in her Achilles tendon. (*Id.* at 275.) Plaintiff correctly points out that Dr. Keeling concluded in September of 2005 that Plaintiff was subject to a 2 to 2.5 percent permanent impairment in her left knee, for which she might "need occasional anti-inflammatory" medication. (*Id.* at 249.) While the ALJ addressed a number of Plaintiff's treating physicians in his decision, he did not expressly mention Dr. Keeling. Nevertheless, Dr. Keeling did not conclude that Plaintiff was unable to work or set forth any functional limitations on Plaintiff's ability to work. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (holding that a lack of physical restrictions from a treating source tends against a finding of total disability); *Hilton Williams v. Barnhart*, Civ. A. No. 7:05cv00674, 2006 WL 3099648, *3 (W.D. Va. Oct. 24, 2006) (unpublished) (finding that a mere diagnosis absent any

9

evidence of actual functional limitations was insufficient to establish disability). Considered alone, or taken with the remainder of the record, Dr. Keeling's treatment notes do not demonstrate that Plaintiff was permanently disabled under the Act or subject to any additional limitations beyond those set forth in the RFC. Likewise, the ALJ's failure to expressly mention Dr. Keeling's opinion does not rise to the level of prejudicial error.[8]

Plaintiff argues further that the Appeals Council failed to consider medical records from Drs. Shaili Deveshwar and Anna Voytek, both with the Sports Medicine & Orthopedics Center in Greensboro, North Carolina, whom Plaintiff visited after the ALJ rendered his decision. (Docket Entry 8 at 4 *citing* Tr. 13, 15). Yet the Appeals Council *did* consider this information. (Tr. 1-2) (referencing consideration of treatment notes from the Sports Medicine & Orthopedics Center). It noted that "This new information is about a later time. Therefore it does not affect the decision about whether you were disabled beginning on or before May 28, 2009." (*Id.* at 2.) Plaintiff correctly points out (Docket Entry 8 at 4) that Dr. Deveshwar diagnosed Plaintiff with "myfascial pain syndrome," noted that Plaintiff's sedimentation rate was "elevated," and noted further that rheumatoid factor was "borderline positive." (Tr. 13-14.) Plaintiff visited Dr. Voytek describing pain in her shoulder and left ankle. (*Id.* at 15.) Dr. Voytek noted a "large subchondral cyst in her right glenoid." (*Id.*) Plaintiff's lab work indicated a "slightly elevated" rheumatoid factor and sedimentation rate.

---

[8] After an earlier visit in May of 2004, Dr. Keeling's treatment notes state that "I still think that both her right & left knee has a 2.5% permanent impairment rating." (Tr. 267.) As discussed above, Dr. Keeling appears to have revised that opinion as of September 2005. To the extent Dr. Keeling's treatment notes could be read as conflicting, the undersigned notes that even assuming a 2.5% permanent impairment in both knees, the assessment set forth in this Opinion and Recommendation remains sound.

(*Id.*)  Dr. Voytek also noted "[s]ignificant diffuse degenerative arthritis" and "underlying fibromyalgia."  (*Id.* at 17.)

The undersigned has reviewed Plaintiff's additional evidence and concludes that the new evidence is not material in that it does not relate to the time period that was before the Commissioner.  *See Edwards v. Astrue*, No. 7:07cv00048, 2008 WL 474128, at *9 (W.D.Va. February 20, 2008) ("The [new evidence does] not relate back to the relevant time period as [it was created] over 6 months after the ALJ rendered his decision.   As such, [it does] not warrant a remand.").  Plaintiff's additional evidence post-dates the ALJ's decision.  *See* 20 CFR §§ 404.976(b)(1), 416.1476(b)(1) ("If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.")   Perhaps most importantly, this evidence does not place limitations on Plaintiff's functional capacity beyond that set forth in the RFC, consequently nothing in this new evidence suggests an outcome different from the ALJ's decision.  *See Miller v. Barnhart*, 64 Fed. App'x 858, 859-60 (4th Cir. 2003) (affirming ALJ because "even assuming the relevance of the additional evidence, it is not material because it would not reasonably have changed the Commissioner's decision had it been before her").

## II.    The ALJ Considered the Entire Record.

Plaintiff next faults the ALJ for "fail[ing] to even address the degenerative and chronic conditions associated with Plaintiff's knees, ankle or foot."   (Docket Entry 8 at 5.)   Plaintiff

argues further that in conjunction with her fibromyalgia, the records of consulting physician Dr. John Zieminski, and the orthopedic records, Plaintiff is clearly disabled. (*Id.*) Plaintiff further notes that "[o]nly a brief statement touches on the fibromyalgia and chronic fatigue components of her condition." (*Id.*) Last, Plaintiff again asserts that the Appeals Council's decision makes no mention of the medical reports of Drs. Deveshwar and Voytek. (*Id.*)

It is true the ALJ does not expressly discuss evidence associated with Plaintiff's knees, ankles, or feet in his decision. This, in itself, is not prejudicial error. It is well established that an ALJ need not provide a written evaluation for each document in the record. *See Brittain v. Sullivan*, No. 91-1132, 1992 WL 44817, *6 (4th Cir. March 11, 1992) (unpublished) ("An ALJ need not comment on all evidence submitted."); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *see also N.L.R.B. v. Beverly Enterprises-Massachusetts*, 174 F.3d 13, 26 (1st Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31 2009) (unpublished) ("[I]t is widely held that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision."); *Brewer v. Astrue*, No. 7:07–CV–24–FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct 21, 2008) (unpublished) ("While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.").

12

Moreover, as Defendant correctly points out (Docket Entry 10 at 13), two reviewing physicians (Dr. Sankar Kumar and Dr. N.B. Shah) examined Plaintiff's records related to these problems and their findings are not inconsistent with the ALJ's RFC. (Tr. 352, 471.) As noted, Dr. Keeling concluded that, at most, Plaintiff had only a 2.5 percent permanent impairment, but Dr. Keeling set forth no functional limitations. The undersigned agrees with the Commissioner that such evidence in conjunction with Plaintiff's fibromyalgia, which the ALJ did discuss in his decision, does not demonstrate that the ALJ erred in concluding that Plaintiff was not disabled.[9] Plaintiff references Dr. Zieminski's diagnosis of fibromyalgia (Docket Entry 8 at 5 *citing* Tr. 329-30), however, upon review nothing about this diagnosis—which omits any limitations beyond those set forth in the RFC—suggests Plaintiff was permanently disabled. Finally, as explained above, the Appeals Council's treatment of new evidence from Drs. Deveshwar and Voytek does not rise to the level of prejudicial error.

### III. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Can Perform Light Work.

Plaintiff next contends that the ALJ's conclusion that Plaintiff can perform light work is legally erroneous and unsupported by substantial evidence. (Docket Entry 8 at 5.) Plaintiff essentially argues that the ALJ either ignored completely or failed to attribute the proper weight to the medical evidence. Plaintiff points to the conclusions of Dr. Margaret Barham, a Disability Determination Services ("DDS") consultant who filled out a Psychiatric

---

[9] In his decision, the ALJ noted that "[W]hile there is no listing for fibromyalgia, its signs and symptoms were evaluated under the applicable body system(s) affected." (Tr. 32.) He noted further that "Inasmuch as chronic fatigue syndrome (CFS) is not a listed impairment, an individual with CFS alone cannot be found to have an impairment that meets the requirements of a listed impairment; however, the specific findings in each case were compared to any pertinent listing to determine whether medical equivalence may exist." (*Id.*)

13

Review Technique form as to Plaintiff stating that Plaintiff (1) "appears able to understand and remember simple instructions but would have some difficulty understanding and remembering complex and detailed instructions," (2) "appears able to maintain the level of attention and concentration required to perform [simple, routine, repetitive tasks]," (3) "appears somewhat capable of interacting appropriately with coworkers, but may have some difficulty in a setting that had more than minimal interpersonal demands," and (4) "some difficulty adapting to routine changes." (Tr. 375.) Dr. Barham noted further that Plaintiff "appears to be capable of performing [simple, routine, repetitive tasks] in a setting with limited stress demands." (*Id.*)

The ALJ did not expressly name Dr. Barham in his decision. However, Dr. Barham's opinion (which also concluded that Plaintiff could perform simple, routine, repetitive tasks) is not inconsistent with the ALJ's RFC (which in part prohibited Plaintiff from performing highly detailed work or work requiring sustained concentration, attention, persistence, or pace for prolonged periods of time). (*Id.* at 34.) Moreover, while Dr. Barham also concluded that Plaintiff had moderate limitations in her ability to respond appropriately to changes in the work setting (*id.* at 374), another DDS consultant (Dr. Mitchel Rapp) finding the same limitation noted that despite this Plaintiff remained capable of adapting to simple tasks at a non-rapid pace (*id.* at 462). Accordingly, the ALJ concluded that Plaintiff was unable to perform any detailed work. (*Id.* at 34.) Plaintiff has failed to point to any evidence in Dr. Barham's medical records suggesting the ALJ committed prejudicial error.

Plaintiff contends further that the medical records of Robin Bridges, a psychiatric nurse

14

practitioner (*id.* at 553), support a finding that Plaintiff's "emotional, mental and personality problems" render her disabled under the Act (Docket Entry 8 at 7 *citing* Tr. 386, 388, 394, 400-07). These notes do indicate that Plaintiff suffers from mental impairments, however, they do not indicate Plaintiff is permanently impaired under the Act. It is true that twice elsewhere in the record Ms. Bridges opined that Plaintiff was disabled and therefore could not work. (Tr. 551-52, 568-69.) As explained above, however, this issue is reserved to the ALJ.

Here, the ALJ discounted Ms. Bridges' opinions, giving them "little weight." (*Id.* at 35.) The ALJ correctly noted that Ms. Bridges' opinions were inconsistent with the medical record as a whole because her notes repeatedly indicate that Plaintiff's memory was generally intact for short term, remote, and recent events and that Plaintiff was also generally able to answer questions appropriately and carry on goal oriented conversations. (*See, e.g.*, Tr. 530, 532, 534-35, 545-47, 549, 551, 553-54, 555, 557.) Moreover, as Defendant correctly points out (Docket Entry 10 at 11-12), by January 2008, Ms. Bridges no longer diagnosed Plaintiff with bipolar disorder. (Tr. 551-52.) In January 2008, Ms. Bridges also attributed Plaintiff's inability to work due to her decreased cognitive capacity. (*Id.*) However, in April 2008, Ms. Bridges noted that Plaintiff was "doing very well" and preparing to graduate from college. (*Id.* at 549-50.) Also, at several points, Ms. Bridges notes that Plaintiff was doing well overall and benefiting from her prescribed medication and treatment. (*Id.* at 549-50, 555-56, 557-58, 561-62.) Ultimately, while Ms. Bridges' treatments notes indicate that Plaintiff had mental impairments, beyond the conclusions mentioned above which address an issue reserved for the Commissioner, these notes do not suggest a more restrictive RFC than the one set forth by

15

the ALJ.   The ALJ did not err in his treatment of Ms. Bridge's opinions.

Plaintiff also references the medical records of Dr. Stephen Levitt, a DDS consultant, which conclude that "Based on her responses [Plaintiff] would have difficulty retaining and following instructions over moderate or longer periods of time," "would have difficulty maintaining attention or concentration," and "would have difficulty maintaining accuracy in repetitive tasks or tolerating stress and pressures associated with day to day full time work." (*Id.* at 440-41.)   Plaintiff asserts that "[g]iven that she cannot handle stress very well, the work environment as a machine operator would become very frustrating and then exacerbate the mental limitations."   (Document Entry 8 at 7.)   However, nothing about these conclusions is inconsistent with the RFC.   As noted above, the ALJ did restrict Plaintiff's RFC to account for these types of limitations.   Likewise, Dr. Levitt did not conclude that Plaintiff was prohibited from exposure to *any* stress.   In short, Plaintiff has not established that the ALJ mishandled Dr. Levitt's conclusions.[10]

The undersigned reaches the same conclusion regarding the medical records of Dr. Julia Brannon, another DDS consultant, who examined Plaintiff and observed that "Subtests measuring conceptual reasoning . . . fall in the low average range.   Subtests measuring short term working memory fall within the borderline range of functioning while a notable weakness is measured on a task requiring mental computation with the score falling in the extremely low

---

[10] The ALJ gave Dr. Levitt's opinion "significant weight" and summarized it as follows, "[B]ased on the claimant's responses, she would have difficulty retaining and following instructions over moderate or longer periods of time, difficulty maintaining attention or concentration, and difficulty maintaining accuracy in repetitive tasks or tolerating the stress and pressure associated with full time work."   (Tr. 36.)

range." (Tr. 356.)[11]   Likewise, Plaintiff points to the medical records of Dr. Carmen

Dohmeier, who performed a consultative neurological evaluation on Plaintiff and diagnosed

her with attention deficit disorder and "some trouble . . . with auditory processing. (*Id.* at

300-01.)   Dr. Dohmeier stated that while Plaintiff "might have a mild form of dyslexia[,] [h]er

memory itself is not impaired." (*Id.* at 301.)   Yet, as explained, the RFC accounts for these

limitations.   Consequently, Plaintiff fails to establish prejudicial error regarding this evidence.

Plaintiff asserts further that the best evidence of her inability to perform light duty

work is demonstrated by her failed attempts to return to work with a modified schedule and

with assistance from her management team. (Docket Entry 8 at 8.)   In support of this

contention, Plaintiff points to her hearing testimony. (*Id.*)   Responding to the ALJ's query as

to why she left her job in 2008, Plaintiff responded:

> I started having a lot of pain, a lot of anxiety.   I really, I
> felt really good about trying to go back to work and like I said,
> when I stated, I would describe it as like being on a tight rope.
> Everything was good.   I felt really good about myself, but as I
> kept doing it and more responsibility and, you know, I could only
> work, I wanted to work part-time, but they said that I need, they
> needed me to cover cases, so I wasn't able to do that and it was
> like the more that they put on my plate, it was like I could just, I
> couldn't handle it.

(Tr. 52.)   Nevertheless, the ALJ partially discounted Plaintiff's testimony. (*Id.* at 35.)

The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ

must evaluate a claimant's symptoms.   The first step requires the ALJ to determine if the

---

[11] The ALJ gave Dr. Brannon's opinion "significant weight" and addressed it as follows, "Dr. Julia
Brannon opined that the claimant was able to understand, retain, and follow instructions; and despite
reports of dyslexia, the claimant did not demonstrate difficulties in academic achievement." (Tr. 36.)

17

plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby*, No. 1:09cv364, 2010 WL 5553677, at *3 (W.D.N.C. Nov. 18, 2010) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c).) "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96-8p requires that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *5. Similarly, in determining the credibility of a claimant, SSR 96–7p, *Assessing the Credibility of an Individual's Statements*, instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96–7p, 1996 WL 374186, at *4. Importantly, an ALJ's

credibility determination is also entitled to "substantial deference." *Sayre v. Chater*, No. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished).

Here, the ALJ performed both steps of the analysis. The ALJ concluded that although the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's statements regarding "intensity, persistence, and limiting effects of [her] symptoms [were] not credible to the extent they are inconsistent with" her RFC. (Tr. 35.) In setting Plaintiff's RFC at light work with additional restrictions the ALJ (1) summarized Plaintiff's testimony, (2) discussed the residual effects of Plaintiff's 2001 car accident, including her subsequent physical therapy which improved her condition, (3) noted that imaging and X-rays were negative for any acute injury, (4) noted that Plaintiff's gait and station were within normal limits, including the ability to walk without an assistive device, (5) noted that muscle strength was normal and range of motion was within limits, and (6) noted that Plaintiff was advised to exercise to relieve pain associated with fibromyalgia. (Tr. at 34-35.) The ALJ then concluded that the records demonstrated that (1) Plaintiff's hyperthyroidism was previously controlled with medication and her levels were within normal range, (2) Plaintiff's hypertension was "moderately elevated," (3) sleep apnea was "better than usual" because of the prescription of a continuous positive airway pressure machine, (4) Plaintiff's perennial allergic rhinitis and seasonal allergies were controlled with medication, and (5) an examining physician (Dr. Xaje Hasanaj) opined that Plaintiff's fibromyalgia would not prevent her from handling an 8 hour job without any problems and that removal from work

activity would be detrimental to Plaintiff in the long run. (*Id.*) The ALJ also made a specific point of noting that he "observed that the claimant's physical complaints in particular seemed exaggerated and were not consistent with the objective findings" and that "the record includes statements by doctors suggesting the claimant was engaging in possible malingering or misrepresentation." (*Id.* at 36.) The ALJ also addressed the evaluations of Ms. Bridges and Drs. Brannon and Levitt, discussed elsewhere herein. The ALJ's findings are supported by the underlying record and amount to substantial evidence supporting the ALJ's RFC for light work, and, despite Plaintiff's argument to the contrary, justify the ALJ's credibility determination.

Plaintiff contends further that the ALJ failed to properly evaluate the testimony of the VE. (Docket Entry 8 at 7 *citing* Tr. 75.) In pertinent part, the ALJ asked the VE the following question:

> You've heard the testimony that [Plaintiff] gave originally concerning musculoskeletal pain and basically all of her extremities along with the testimony she's given today concerning episodes of anxiety and depression which significantly interfere with her daily activities. If I find the testimony fully true and credible and find that she does experience all of the limitations she's described under those circumstances, do you know of work in the national or local communities that could be performed by someone of her age, education and vocational background who was so limited?

(Tr. 75.) In response, the VE stated "No, sir, I don't believe that there would be any jobs that one could maintain." (*Id.* at 75.) The ALJ did not adopt this conclusion. Plaintiff's argument simply recasts her assertion that the ALJ's credibility assessment was unsupported by the record, which, as assessed above, is an argument lacking merit. *See Johnson v.*

20

*Commissioner of Social Sec.*, 398 F. App'x 727, 735 (3rd Cir. 2010) (concluding that ALJ's failure to explain why he did not consider VE's answer to second hypothetical question, which included work restriction of frequent breaks, did not render his finding deficient because it was obvious the answer was immaterial once the ALJ made RFC determination, which did not include need for frequent breaks); *Boynton v. Apfel*, No. 98-1987, 1999 WL 38091, *4 (7th Cir. Jan. 7, 1999) (unpublished) (concluding that ALJ did not need to explicitly address second hypothetical because his findings implicitly rejected the basis for that question).

## IV.  Substantial Evidence Supports the ALJ's Conclusion That Plaintiff Does not Meet or Equal a Listed Impairment.

Plaintiff next argues that the Commissioner erred in finding that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. (Docket Entry 8 at 8.)   The ALJ concluded that Plaintiff did not meet or equal the criteria of Listing 12.04 (depression) and 12.06 (anxiety).   (Tr. 31-32.)   The "Listings in 12.00" address these two mental impairments in Listing 12.04 and Listing 12.06, respectively.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04 (pertaining to "Affective Disorders: Characterized by a disturbance of mood . . . generally involv[ing] either depression or elation"), 12.06 (encompassing "Anxiety Related Disorders").

To satisfy Listing 12.04, a claimant must show: At least two of the following:

  1. Marked restriction of activities of daily living; or

  2. Marked difficulties in maintaining social functioning; or

  3. Marked difficulties in maintaining concentration, persistence, or pace; or

  4. Repeated episodes of decompensation, each of extended

21

duration . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04B.   Or one of the following:

    1.  Repeated episodes of decompensation, each of extended duration; or

    2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id* at § 12.04C.[12]

The requirements of Listing 12.06 similarly include either "complete inability to function independently outside the area of one's home" or "at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06B-C.

Here, the ALJ found that Plaintiff had no marked limitations, but had only established mild limitations in her ability to perform activities of daily living, moderate difficulties in social functioning, and moderate limitations in her ability to maintain concentration, persistence or

---

[12] To qualify as "marked," a limitation must "interfere seriously with [one's] ability to function independently, appropriately, effectively, and on a sustained basis."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).   Decompensation refers to "an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

pace. (Tr. 33.) The ALJ also found that the evidence did not establish that Plaintiff had any episodes of decompensation of extended duration. (*Id.*) The ALJ then concluded that Plaintiff did not establish that she satisfied the criteria listed in Part C set forth above. (*Id.*) As Defendant correctly points out (Docket Entry 10 at 6-7) these findings are not inconsistent with the expert opinions of the DDS consultants and the ALJ was entitled to rely upon them. (Tr. at 359-76, 446-63.) *See* 20 C.F.R. §§ 404.1527(f), 416.927(f); *Stanley v. Barnhart*, 116 Fed. App'x 427, 429 (4th Cir. 2004). Dr. Barham concluded that Plaintiff had mild difficulties performing activities of daily living and maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, but noted that there was insufficient evidence to establish if she had episodes of decompensation of extended duration. (Tr. 369.) Dr. Rapp found moderate difficulties in maintaining social functioning and noted that Plaintiff had no episodes of decompensation of extended duration, but otherwise agree with Dr. Barham's conclusions. (*Id.* at 456.) Moreover, Plaintiff has pointed to no specific evidence demonstrating she meets or equals any listed mental impairment.

Plaintiff does point to the notes of Drs. Levitt, Brannon, and Bridges in support of her argument, all of whom are addressed above and need not be discussed again. (Docket Entry 8 at 8.) Beyond this, Plaintiff points to the medical records of treating psychologist Dr. Barbara Smith, which Plaintiff correctly points out demonstrate "extensive efforts to find the correct medication for Plaintiff's mental disorders . . . ." (*Id.* citing Tr. 304-06.) Dr. Smith's treatment notes demonstrate that Plaintiff suffered from mental impairments (*see, e.g.,* Tr. 308, 315) but do not place limitations on Plaintiff. On one occasion, Dr. Smith's treatment notes

23

also point out that Plaintiff is "doing fairly well." (*Id.* at 316.) Consequently, while the ALJ did not discuss Dr. Smith in his decision, nothing in Dr. Smith's treatment notes indicate that the ALJ committed prejudicial error in ultimately concluding Plaintiff does not suffer from a listed impairment or is not disabled.

## V.    The ALJ Did Not Err in Using the Grids as a Framework.

Last, Plaintiff contends that the ALJ improperly used Medical-Vocational Guidelines (the "grids") to direct a conclusion of not disabled. (Docket Entry 8 at 8-9.) This argument lacks merit. Where a claimant suffers from non-exertional impairments,[13] the Commissioner may not rely exclusively on the grids and instead must present evidence from a vocational expert that a particular claimant retains the ability to perform work that exists in the national economy. *Grant*, 699 F.2d at 192. However, the Fourth Circuit has made clear that not all non-exertional conditions or maladies rise to the level of "non-exertional impairments," such that they would preclude the use of the grids. *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984). Where non-exertional conditions do not "significantly affect [Plaintiff's] ability to perform work of which [s]he was exertionally capable," they are not considered impairments for purposes of determining whether jobs that Plaintiff can perform exist in the national economy, and the ALJ may deny benefits "based upon a straightforward application of the grids," without testimony from a vocational expert. *Id.* at 724. Indeed, the ALJ may rely exclusively on the grids where the ALJ has properly decided, as an issue of fact, that Plaintiff's

---

[13] A non-exertional impairment is an impairment "not manifested by a loss of strength or other physical abilities." *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983.)

Case 1:10-cv-00420-JAB-JLW   Document 11   Filed 05/16/13   Page 24 of 26

non-exertional condition does not affect her capacity for work. *Stratton v. U.S. Dep't of Health & Human Servs.*, No. 88–1614, 1989 WL 100814, at *3 (4th Cir. July 24, 1989) (unpublished opinion).

Here, despite Plaintiff's arguments to the contrary, the ALJ did not apply the grids directly. Instead, the ALJ relied on Rule 202.21 of the grids as a "framework for decision making" in tandem with the testimony of a VE, who concluded that a claimant like Plaintiff could perform past relevant work as a machine operator (Tr. 36-37, 72-74) and, alternatively, could perform additional unskilled sedentary work such as order clerk, charge account clerk, and optical goods worker (*id.* at 75.) Plaintiff appears to contend that the ALJ ought to have used Rule 202.18 in this case, however, if the ALJ had used that Rule as a framework for his decision, it too would have directed a result of disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rules 202.18 and 202.21.

Plaintiff also notes that Dr. Levitt found that Plaintiff is learning disabled in a number of areas, that Plaintiff's personality and emotional issues may impact her work, and that Plaintiff's test results demonstrated an inconsistent ability to understand, retain, and follow directions due to emotional interference. (Docket Entry 8 at 9 *citing* Tr. 438-40.) Yet, the ALJ accounted for any such non-exertional limitations in his hypotheticals to the VE. (Tr. 73, 74). Thus, the VE took into account Plaintiff's limitations in reaching the conclusion that a claimant like Plaintiff could perform jobs in the national economy. Accordingly, the ALJ properly concluded that Plaintiff was not disabled under the Act.

# VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing Commissioner (Docket Entry 7) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 9) be **GRANTED** and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
May 16, 2013